**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **CERTAINTEED CEILINGS CORP.,**<br>        **Plaintiff,**<br><br>                **v.**<br><br>**DANIEL F. AIKEN,**<br>        **Defendant.** | **CIVIL ACTION**<br><br><br><br>**NO. 14-3925** |

**MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS**

**Baylson, J.**                                                                    **January 29, 2015**

## I.      Introduction

In this diversity action, Plaintiff CertainTeed Ceilings Corporation ("CertainTeed") alleges that its former sales representative, Defendant Daniel Aiken ("Aiken"), breached his contractual and fiduciary duties and misappropriated trade secrets when Aiken resigned from CertainTeed to work for a competing company. Presently before the Court is Aiken's Rule 12(b)(6) motion to dismiss the counts of CertainTeed's Amended Complaint that allege breach of fiduciary duty and misappropriation of trade secrets. For the reasons set forth in this memorandum, the Court will grant Aiken's motion with respect to Count Two, alleging breach of fiduciary duty, and deny Aiken's motion with respect to the counts alleging misappropriation of trade secrets in violation of various state Uniform Trade Secrets Acts.

## II.      Factual and Procedural Background[1]

CertainTeed's Amended Complaint alleges that Aiken was employed as a CertainTeed Architectural Sales Associate and then Architectural Sales Manager from June 1, 2010 until he

---

[1] For purposes of deciding this motion to dismiss, the Court accepts as true all well-pleaded facts in CertainTeed's complaint.

resigned effective May 1, 2014. Am. Compl. ¶¶ 12-14 (ECF 14). His job was to sell acoustical ceiling systems to distributors and contractors through interactions with architects, contractors, and distributors. Id. ¶ 18. Aiken's sales territory encompassed portions of Virginia, West Virginia, Maryland, Delaware, and the District of Columbia. Id. at 19 & Ex. C.

During the course of his employment, Aiken allegedly had access to CertainTeed's confidential information and trade secrets, including "customer lists, detailed information about CertainTeed customers' projects, projects, product development plans, marketing, sales and business methods, systems and strategies, sales, competitor, and market intelligence, product and plant cost structure, pricing models and projects with Ecophon specifications." Id. ¶ 22. He was also responsible for "maintaining a database of architects, contractors and distributors and information about them and existing projects for his Territory." Id. ¶ 21. Aiken "used CertainTeed's Confidential Information and Trade Secrets in the regular performance of his duties as an Architectural Sales Manager." Id. ¶ 23.

Before taking his job at CertainTeed, Aiken signed a "Noncompete Employee Agreement" that required him to protect CertainTeed's confidential, trade secret, and proprietary information during and after his term of employment and restricted him from working for a competitor for one year after leaving CertainTeed. Id. ¶¶ 26-33 & Ex. D. CertainTeed regularly uses employment agreements and noncompete covenants to protect its confidential information and trade secrets. Id. ¶ 9.

Immediately after resigning from CertainTeed, Aiken started a job with Rockfon, LLC, one of CertainTeed's direct competitors in the ceiling products market. Id. ¶¶ 24-25, 35, 49, 52. At Rockfon, Aiken is an "Architectural Sales Manager" with "identical and/or nearly identical job responsibilities" to his role at CertainTeed. Id. ¶¶ 37-39. Aiken was hired by Rockfon to

work in substantially the same territory he had served for CertainTeed.[2] <u>Id.</u> ¶¶ 40-41.
CertainTeed alleges that (1) "it would be impossible for Aiken to perform his duties with
Rockfon without disclosing CertainTeed's Confidential Information and Trade Secrets and/or
there is a substantial threat of such disclosure," <u>id.</u> ¶ 43; (2) "Aiken has and/or inevitably will
disclose and/or use CertainTeed's Confidential Information and Trade Secrets in the
performance of his job duties with Rockfon," <u>id.</u> ¶ 47; and (3) "Aiken has and/or inevitably will
disclose and/or use CertainTeed's Confidential Information and Trade Secrets to compete with
CertainTeed," <u>id.</u> ¶ 48.

CertainTeed alleges six separate counts: (I) breach of contract, based on Aiken's alleged
violation of the noncompete and nondisclosure provisions in his Noncompete Employee
Agreement, <u>id.</u> ¶¶ 56-66; (II) breach of fiduciary duty, based on Aiken's alleged disclosures of
CertainTeed's confidential information and trade secrets, <u>id.</u> ¶¶ 67-75; and (III-VI) violations of
the Uniform Trade Secrets Acts of Pennsylvania, Maryland, Virginia, and the District of
Columbia, <u>id.</u> ¶¶ 76-107. CertainTeed seeks both damages and injunctive relief. <u>Id.</u> at 18-19.

CertainTeed filed suit on June 25, 2014 and moved for a preliminary injunction that same
day (ECF 1, 3). Aiken filed a motion to dismiss on July 16, 2014 (ECF 7) and CertainTeed
responded by filing an Amended Complaint on August 4, 2014 (ECF 14). On August 19, 2014,
Aiken filed the present Motion to Dismiss Counts II through VI of the Amended Complaint,
relating to the claims for breach of fiduciary duty and violations of the four state Uniform Trade
Secrets Acts (ECF 22). CertainTeed filed an opposition to Aiken's motion on September 5, 2014
(ECF 30). Aiken's motion to dismiss is ripe for resolution.

---

[2] After the Court granted CertainTeed's motion for a preliminary injunction (ECF 33, 37), Aiken reportedly began
working for Rockfon in a different geographic area, in compliance with the Court's injunction. Status Report at 2
(ECF 36). For purposes of this motion to dismiss, however, the relevant facts are those pleaded in the amended
complaint.

Concurrently, the parties agreed to conduct expedited discovery (ECF 5), the Court held oral argument on the motion for preliminary injunction (ECF 32, 33), and the Court granted a preliminary injunction on October 9, 2014 (ECF 33, 37). Aiken's appeal of the preliminary injunction order is presently pending before the Third Circuit (ECF 38).

## III.    The Parties' Contentions

Aiken seeks dismissal of all counts except for CertainTeed's breach of contract claim. Mot. to Dismiss (ECF 22). With respect to CertainTeed's claims for misappropriation of trade secrets under the Pennsylvania, Maryland, Virginia, and District of Columbia Uniform Trade Secrets Acts (Counts III through VI), Aiken makes two arguments. First, he argues that CertainTeed has failed to plead sufficient facts to identify the trade secrets in Aiken's possession and to show that Aiken has or likely will disclose those trade secrets. Aiken Memo. of Law at 5-10 (ECF 22-1). Second, Aiken argues that CertainTeed's misappropriation claims are based on a theory of inevitable disclosure, which is not recognized in Maryland, Virginia, or the District of Columbia, and that CertainTeed has not pled sufficient facts to make this claim plausible under Pennsylvania law. Id. at 10-12. CertainTeed counters that it has sufficiently identified its trade secrets for the purposes of pleading, has pled the requisite facts to support a claim for inevitable disclosure of trade secrets under Pennsylvania law, and has pled facts that support claims for actual or threatened misappropriation of trade secrets in all four states. CertainTeed Opp. at 6-18 (ECF 30).

As for CertainTeed's claim for breach of fiduciary duty, Aiken argues that there are no allegations that he breached any duty during his employment and that any allegations that he breached an ongoing duty fail for the same reasons as CertainTeed's statutory misappropriation of trade secrets claims. Aiken Memo. of Law at 12-13. Aiken also argues that the breach of

fiduciary duty claim is barred by the gist of the action doctrine, which bars tort claims based on or identical to contractual claims. Id. at 13-14. CertainTeed responds that the facts alleged in its complaint show that Aiken violated his fiduciary duty to CertainTeed during his employment, that his fiduciary duty not to disclose confidential information continues after his employment, and that the fiduciary duty claim is broader than the statutory misappropriation claims because it includes disclosure of confidential information in addition to trade secrets. CertainTeed Opp. at 19-22. CertainTeed contends that the gist of the action doctrine does not apply because Aiken's fiduciary duty arises from the fact of his employment, not from his signing a Noncompete Employee Agreement, and thus CertainTeed's breach of fiduciary duty claim is independent of its breach of contract claim. Id. at 22-23.

## IV.    Legal Standard

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential–Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985). The well-pleaded allegations accepted as true for purposes of a Rule 12(b)(6) motion to dismiss include "facts alleged on information and belief." Melo-Sonics Corp. v. Cropp, 342 F.2d 856, 859 (3d Cir. 1965).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the

5

Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'" 556 U.S. at 684.

The Court in <u>Iqbal</u> explained that, although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, pleadings must include factual allegations to support the legal claims asserted. <u>Id.</u> at 678, 684. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." <u>Id.</u> at 678 (citing <u>Twombly</u>, 550 U.S. at 555); <u>see also</u> <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 232 (3d Cir. 2008) ("We caution that without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests." (citing <u>Twombly</u>, 550 U .S. at 556 n. 3)). Accordingly, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678 (citing <u>Twombly</u>, 550 U.S. at 556).

**V.    Discussion**

   A.    <u>CertainTeed has Stated Claims for Violations of the Uniform Trade Secrets Acts of Pennsylvania, Maryland, Virginia, and the District of Columbia</u>

Pennsylvania, Maryland, Virginia, and the District of Columbia have all adopted the Uniform Trade Secrets Act (UTSA), with only minor variations. Under these laws, a "trade secret" is defined to include:

> Information, including a formula, drawing, pattern, compilation including a customer list, program, device, method, technique or process that:
>
> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

6

12 Pa. Cons. Stat. Ann. § 5302; see D.C. Code §§ 36-401(4); Md. Code Ann., Com. Law

§§ 11-1201(e); Va. Code Ann. §§ 59.1-336.[3] "Misappropriation" is defined to include:

> disclosure or use of a trade secret of another without express or implied consent
> by a person who . . . at the time of disclosure or use, knew or had reason to know
> that his knowledge of the trade secret was . . . acquired under circumstances
> giving rise to a duty to maintain its secrecy or limit its use.[4]

12 Pa. Cons. Stat. Ann. § 5302; see D.C. Code §§ 36-401(2)(B)(ii)(II); Md. Code Ann., Com.

Law §§ 11-1201(c)(2)(ii)(2); Va. Code Ann. §§ 59.1-336. Each jurisdiction provides injunctive

relief for "[a]ctual or threatened misappropriation." 12 Pa. Cons. Stat. Ann. § 5303(a); D.C.

Code §§ 36-402(a); Md. Code Ann., Com. Law §§ 11-1202(a); Va. Code Ann. §§ 59.1-337(A).

And each jurisdiction provides for damages for misappropriation, including exemplary damages

for willful or malicious misappropriation.[5] 12 Pa. Cons. Stat. Ann. § 5304(a)-(b); D.C. Code §§

36-403(a)-(b); Md. Code Ann., Com. Law §§ 11-1203(a), (d); Va. Code Ann. §§ 59.1-338(A)-

(B). Because the relevant portions of the statutes are nearly identical, for purposes of this

memorandum the Court will focus on the Pennsylvania UTSA and discuss differences among the

jurisdictions only when necessary.

 In assessing whether particular information is a protected trade secret, Pennsylvania

courts consider six factors:

---

[3] The District of Columbia, Maryland, and Virginia definitions omit the phrase "including a customer list" but are otherwise identical to the Pennsylvania provision.

[4] The Pennsylvania UTSA was enacted in 2004. The parties both cite to pre-UTSA cases for the elements of misappropriation of trade secrets. See ECF 23 at 48; ECF 24 at 29. The Third Circuit has recognized that "[t]he PUTSA displaced Pennsylvania's common law tort for misappropriation of trade secrets, but there is no indication that the statute effected a substantive shift in the definition of trade secret." Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 n.7 (3d Cir. 2010) (internal quotation marks omitted); see 12 Pa. Cons. Stat. Ann. § 5308 (providing that the PUTSA "displaces conflicting tort, restitutionary and other law of this Commonwealth providing civil remedies for misappropriation of a trade secret" but does not affect certain remedies including contractual remedies based upon misappropriation of a trade secret). In accordance with Bimbo Bakeries, the elements of misappropriation of trade secrets laid out in this memorandum are based on the statutory cause of action not the historical tort, while the definition of "trade secret" may reference decisions from both pre- and post-UTSA.

[5] Each jurisdiction allows for exemplary or punitive damages up to twice the amount of damages for actual losses and unjust enrichment, but only Virginia caps punitive damages at $350,000.

(1) the extent to which the information is known outside of the company's business; (2) the extent to which the information is known by employees and others involved in the company's business; (3) the extent of the measures taken by the company to guard the secrecy of the information; (4) the value of the information to the company and its competitors; (5) the amount of effort or money the company spent in developing the information; and (6) the ease or difficulty with which the information could be acquired or duplicated legitimately by others.

Bimbo Bakeries USA, Inc. v. Botticella, 613 F.3d 102, 109 (3d Cir. 2010). "[T]rade secrets need not be technical in nature to be protected fully by Pennsylvania law." Id. at 112 (internal quotation marks omitted).

Determining whether particular information is a trade secret is a fact- and context-specific process. For example, customer lists are "at the very periphery of the law of unfair competition." Iron Age Corp. v. Dvorak, 880 A.2d 657, 663 (Pa. Super. 2005) (internal quotation marks omitted). "Customer lists receive protection as trade secrets . . . [but] only if they cannot be 'easily or readily obtained' from an independent source. The courts will not grant protection to customer lists which are readily and easily generated from trade journals, telephone book listings, or other sources of information available generally." Mettler-Toledo, Inc. v. Acker, 908 F. Supp. 240, 246-47 (M.D. Pa. 1995) (citations omitted). Moreover, "an employee's personal business contacts, although made while in plaintiff's employ, are not plaintiff's trade secrets." BIEC Int'l, Inc. v. Global Steel Servs., Ltd., 791 F. Supp. 489, 546 (E.D. Pa. 1992) (holding that defendant former employees could continue to use "their personal rolodex files, although largely developed while in [plaintiff's] employ"). Likewise, a trade secret "does not include a worker's aptitude, his skill, his dexterity, his manual and mental ability, and such other subjective knowledge as he obtains while in the course of his employment." Christopher M's Hand Poured Fudge, Inc. v. Hennon, 699 A.2d 1272, 1275 (Pa. Super. 1997) (internal quotation marks omitted). Overall, "the concept of a trade secret is at best a nebulous one" and, as a result, "many

courts have opined that the question of whether certain information constitutes a trade secret is a question of fact to be resolved by the jury or the trier of fact." Ozburn-Hessey Logistics, LLC v. 721 Logistics, LLC, 13 F. Supp. 3d 465, 474 (E.D. Pa. 2014) (citations and internal quotation marks omitted).

In general, "courts within the Third Circuit have not required a party alleging misappropriation to describe trade secrets with particularity in order to survive a motion to dismiss." Synthes, Inc. v. Emerge Med., Inc., No. 11-cv-1566, 2012 WL 4205476, at *27 (E.D. Pa. Sept. 19, 2012) (collecting cases). For example, in Synthes, the alleged trade secrets included "information about Synthes' customers, business activities, and strategies as well as information regarding Synthes' product development plans, pipeline, and launches; technology and product performance; expansion plans; pricing; competitive terms; contract and sales administration; compensation and personnel; and other sensitive information related to Synthes' business." Id. at *28. These descriptions were "more than sufficient to survive a Motion to Dismiss." Id. Judge Buckwalter's opinion in Synthes and CertainTeed's opposition brief identify additional cases from courts within the Third Circuit that reached the same result with similar factual allegations. Id. at *27; CertainTeed Opp. at 8-11.

Applying these principles, the Court concludes that CertainTeed has sufficiently identified the trade secrets that it alleges Aiken is misappropriating or will misappropriate. CertainTeed alleged that Aiken was given access to "customer lists, detailed information about CertainTeed customers' projects, project, product development plans, marketing, sales and business methods, systems and strategies, sales, competitor, and market intelligence, product and plant cost structure, pricing models and projects with Ecophon specifications." Am. Compl. ¶ 22. It further alleged that CertainTeed protects this information with noncompete covenants and

employment agreements. Id. ¶ 9. These allegations adequately plead the existence of CertainTeed's trade secrets, Aiken's knowledge of them, and their protected status.

CertainTeed has also adequately alleged that Aiken is misappropriating CertainTeed's trade secrets. CertainTeed alleged that Aiken left CertainTeed to take a job with "identical and/or nearly identical job responsibilities" at a direct competitor in substantially the same sales territory. Am. Compl. ¶¶ 24-25, 35, 37-41, 49, 52. It further alleged that, while at CertainTeed, Aiken used CertainTeed's confidential information and trade secrets "in the regular performance of his duties." Id. ¶ 23. Given these facts about Aiken's job duties and activities, and given the nature of CertainTeed's alleged trade secrets (which include information about customers, projects, products, and pricing), CertainTeed has adequately alleged that Aiken is actively using CertainTeed's trade secrets in the performance of his duties at Rockfon to compete with CertainTeed. Id. ¶¶ 47-48. "Misappropriation" includes the "use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use." 12 Pa. Cons. Stat. Ann. § 5302. If proven at trial, the facts alleged in CertainTeed's complaint could satisfy the statutory definition of "misappropriation." CertainTeed has therefore stated a claim for actual misappropriation of trade secrets under the UTSAs of Pennsylvania, Maryland, Virginia, and the District of Columbia.[6]

Aiken has not cited any cases applying Pennsylvania law that reach a different result and the cases that he cites from other jurisdictions are inapposite or readily distinguishable from the facts of this case. See Aiken Memo. of Law at 5-10. For example, Aiken cites to StrikeForce

---

[6] Having concluded that CertainTeed stated a claim for actual misappropriation, the Court need not address the parties' arguments regarding the inevitable disclosure doctrine.

Technologies, Inc. v. WhiteSky, Inc. for the proposition that a "claim may not proceed based on allegations that do nothing more than recite the elements of the cause of action." No. 13-cv-1895, 2013 WL 3508835, at *8 (D.N.J. July 11, 2013). Although this quotation states the legal standard accurately, it is not dispositive in this case where CertainTeed has alleged facts that go beyond a mere recital of the elements of the cause of action. Likewise, Aiken's citation to All Business Solutions, Inc. v. NationsLine, Inc., a case interpreting the Virginia UTSA, is unavailing. 629 F. Supp. 2d 553, 558-59 (W.D. Va. 2009). In that case, the plaintiff had alleged a "single, conclusory assertion that [defendant] 'sought . . . to appropriate and disclose the names of [plaintiff's] customers, along with other [of plaintiff's] trade secrets and confidential information.'" Id. The fact that such a vague allegation was inadequate in All Business Solutions is inapposite here because CertainTeed has identified specific trade secrets and facts about how Aiken is allegedly misappropriating them.

For all of these reasons, Aiken's motion will be denied with respect to Counts Three through Six.

B.   CertainTeed's Claim for Breach of Fiduciary Duty is Barred by the Gist of the Action Doctrine

CertainTeed alleges that "Aiken was in a position of trust and confidence" and had a "fiduciary duty" to "act in good faith and solely for the benefit of CertainTeed," which he breached by "using and/or disclosing CertainTeed's Confidential Information and Trade Secrets." Am. Compl. ¶¶ 68, 73. Aiken acknowledges that he at least owed CertainTeed a "duty of loyalty" during his employment and "may have a continuing obligation" not to disclose CertainTeed's trade secrets. Aiken Memo. of Law at 12-13. Nevertheless, Aiken argues that CertainTeed's claim for breach of fiduciary duty is barred by the "gist of the action" doctrine and the Court agrees.

11

Pennsylvania's gist of the action doctrine is "employed to ensure that a party does not bring a tort claim for what is, in actuality, a claim for a breach of contract." Bruno v. Erie Ins. Co., ---A.3d ----, No. 25 WAP 2013, 2014 WL 7089987, at *10 (Pa. Dec. 15, 2014). "[T]he mere existence of a contract between two parties does not, ipso facto, classify a claim by a contracting party for injury or loss suffered as the result of actions of the other party in performing the contract as one for breach of contract." Id. at *18. However, "[w]hen a plaintiff alleges that the defendant committed a tort in the course of carrying out a contractual agreement, Pennsylvania courts examine the claim and determine whether the 'gist' or gravamen of it sounds in contract or tort" by "ascertain[ing] the source of the duties allegedly breached." Brown & Brown, Inc. v. Cola, 745 F. Supp. 2d 588, 619 (E.D. Pa. 2010) (internal quotation marks omitted).

"The important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter of social policy while the former lie for the breach of duties imposed by mutual consensus." Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc., 247 F.3d 79, 103-04 (3d Cir. 2001) (quoting Redevelopment Auth. of Cambria County v. Int'l Ins. Co., 685 A.2d 581, 590 (Pa. Super. 1996) (en banc)). To determine the "nature of the duty alleged to have been breached," "the substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance." Bruno, 2014 WL 7089987, at *18. "If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract." Id. Conversely, if "the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort." Id. In short, "a

claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied in the law of torts." Bohler, 247 F.3d at 104 (internal quotation marks omitted).

The gist of the action doctrine generally "bars tort claims: (1) arising solely from a contract between the parties; (2) where the duties allegedly breached were created and grounded in the contract itself; (3) where the liability stems from a contract; or (4) where the tort claim essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract." Brown & Brown, 745 F. Supp. 2d at 619-20 (internal quotation marks omitted). "Whether the gist of the action doctrine applies in any particular setting is a question of law." Id. at 620. "In the context of a single case, some allegations of breach of fiduciary duty may be barred by the gist of the action doctrine, while others may be deemed to be outside the scope of the contract at issue." Id.

In Bohler, the Third Circuit considered whether the gist of the action doctrine barred tort claims for breach of fiduciary duty and misappropriation of trade secrets and confidential information that had been submitted to a jury.[7] 247 F.3d at 103-07. The case involved a dispute between two companies that had formed a joint venture to forge steel ingots and negotiated a joint venture agreement. Id. at 86-87. The Third Circuit held that the claim for breach of fiduciary duty was not barred by the gist of the action doctrine because the complaint alleged violations of the defendant's fiduciary duty "that went well beyond the particular obligations contained in the [Joint Venture] Agreement itself." Id. at 104-05. These obligations stemmed from a "larger social policy" requiring "fair dealing and solicitude from a majority shareholder to minority shareholders in a joint venture." Id.

---

[7] Bohler pre-dated the adoption of the Pennsylvania UTSA and thus concerned a common law tort claim for misappropriation of trade secrets and confidential information, not a statutory claim.

With respect to the claim for misappropriation of trade secrets and confidential information, the Third Circuit distinguished between the different types of information that were at issue. The Third Circuit held that the misappropriation claim was barred by the gist of the action doctrine to the extent it relied on misappropriation of information covered by the "Know-How Agreement" portions of the parties' joint venture agreement. Id. at 106. With respect to "know-how", "the parties' obligations [we]re defined by the terms of the contract, and not by the larger social policies embedded in the law of torts." Id. (internal quotation marks omitted). However, to the extent the claim was based on misappropriation of less technical information not covered by the Know-How Agreement (such as client lists and pricing information), it passed the gist of the action test and was not barred. Id. at 107. Because the jury instructions and verdict form had not distinguished between know-how and other types of information outside the scope of the Know-How Agreement, the Third Circuit set aside the verdict and remanded for determination of the claim based solely on misappropriation of information not covered by the Know-How Agreement. Id.

More recently, in Brown & Brown, Judge Buckwalter of this District evaluated motions to dismiss various tort claims based on the gist of the action doctrine, including claims for breach of fiduciary duty. 745 F. Supp. 2d 588. The case involved an insurance brokerage that was suing two former employees who had resigned to take jobs with a competitor, allegedly in violation of their employment agreements and various other duties. Id. at 597-602. The employment agreements at issue contained covenants not to solicit the employer's current or prospective customers, not to use or disclose the employer's confidential information, not to solicit the employer's other employees to work for a competitor, and not to actively plan or organize a competing business while employed by the plaintiff. Id. at 598-99. In assessing Brown &

14

Brown's claims for breach of fiduciary duty and breach of duty of loyalty, the court concluded that these claims "are nothing more than a restatement of Plaintiffs' breach of contract claim" because "Plaintiffs put forth no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of [defendants'] obligations under the Employment Agreements." <u>Id.</u> at 621. These duties "were imposed by 'mutual consensus' rather than 'as a matter of social policy,' and are thus inextricably intertwined with the contracts." <u>Id.</u> As a result, these claims were barred by the gist of the action doctrine. <u>Id.</u>

Another example of how the gist of the action doctrine applies to breach of fiduciary duty claims comes from <u>Alpart v. Gen. Land Partners, Inc.</u> 574 F. Supp. 2d 491, 499-500 (E.D. Pa. 2008). <u>Alpart</u> concerned various claims by two limited partners of a real estate development partnership against the general partner and others. <u>Id.</u> at 496-97. Judge Brody of this District concluded that the breach of fiduciary duty claims fell into two categories. <u>Id.</u> at 500. Claims that were based on actions covered by the partnership agreements were "the same as the plaintiffs' breach of contract and anticipatory breach claims" and thus were barred by the gist of the action doctrine. <u>Id.</u> However, claims based on actions not covered by any of the partnership agreements were not barred, as they asserted breaches of duties that "may come from the social contract inherent in a partnership" and "may be matters of social policy and not contract." <u>Id.</u>

Consistent with the holdings in <u>Bohler</u>, <u>Brown & Brown</u>, and <u>Alpart</u>, many other published and unpublished decisions that evaluate whether claims for breach of fiduciary duty are barred by the gist of the action doctrine can be grouped into two categories. First, as in <u>Bohler</u> and <u>Alpart</u>, claims for breach of fiduciary duty are not barred if the fiduciary duty at issue goes "beyond the particular obligations contained in" the parties' contract. <u>Bohler</u>, 247 F.3d at 105; <u>Rahemtulla v. Hassam</u>, 539 F. Supp. 2d 755, 779 (M.D. Pa. 2008) (claims for breach of

fiduciary duty not barred because such duties "are separate and distinct from the contractual duties contained within [the parties'] Partnership Agreement" which "does not provide for the fundamental characteristics of trust, fairness, honesty, and good faith that define the essence of the partners' relationship"); Orthovita, Inc. v. Erbe, No. 07-cv-2395, 2008 WL 423446, at *7-8 (E.D. Pa. Feb. 14, 2008) (holding that claims for breach of fiduciary duty and duty of loyalty were not barred because complaint alleges "generalized harm" from "acts and omissions" that go beyond contractual claims and former employee's "fiduciary duties extend beyond the limits of an employment contract due to the parties' relative positions"); Murphy v. Mid E. Oil Co., No. 06-cv-1343, 2007 WL 527715, at *6-7 (W.D. Pa. Feb. 14, 2007) (claim not barred because "the parties had fiduciary obligations that went beyond their agreements due to their relationship in a limited partnership" and the obligations at issue were "not defined by the terms of a contract").

Second, as in Alpart and Brown & Brown, breach of fiduciary duty claims are barred by the gist of the action doctrine if there are "no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside of" the parties' contractual agreements. Brown & Brown, 745 F. Supp. 2d at 621; Cunningham Lindsey U.S., Inc. v. Bonnani, No. 13-cv-2528, 2014 WL 1612632, at *7 (M.D. Pa. Apr. 22, 2014) (dismissing claim for breach of fiduciary duty because the claim was "governed entirely by the [defendants'] employment agreements and their respective non-solicitation and non-competition provisions" and the plaintiff "failed to allege any conduct underlying its fiduciary duty . . . claim[] that is not contemplated by the defendants' contracts"); Hill v. Best Med. Int'l, Inc., No. 07-cv-1709, 2011 WL 5082208, at *31 (W.D. Pa. Oct. 25, 2011) (claim for breach of duty of loyalty barred because the complaint identified only the "breach of the confidentiality provisions of the [parties'] employment agreement" and, "although other fiduciary duties could be inferred from [former employee's] position" as a

corporate officer, the former employer "fail[ed] to allege any breaches of such duties"); AMG Nat'l Trust Bank v. Ries, No. 06-cv-4337, 2011 WL 6840586, at *5 (E.D. Pa. Dec. 29, 2011) (holding that claim for breach of fiduciary duty was barred by the gist of the action doctrine because the only example of misconduct was behavior forbidden by employment contract, the damages were "'inextricably intertwined' with the damages resulting from [the employee's] violation of the restrictive covenant," and the plaintiff "fail[ed] to identify any duty owed by [defendant] that is not grounded in his contractual obligations").

Nevertheless, "a court should be slow to dismiss claims under the gist of the action doctrine." Orthovita, 2008 WL 423446, at *4. "Federal civil procedure allows parties to plead multiple claims as alternative theories of liability." Id.; Fed. R. Civ. P. 8(e)(2). Moreover, some courts that have examined the application of the gist of the action doctrine to claims for breach of fiduciary duty have concluded that fiduciary duties are imposed as a matter of social policy, independent of any employment contract, and therefore the gist of the action doctrine does not apply.

For example, in Freedom Medical, Inc. v. Gillespie, the plaintiff corporation alleged that a number of former employees had stolen its inventory and business opportunities, in violation of various statutory, tort, and contractual duties. 634 F. Supp. 2d 490, 496 (E.D. Pa. 2007). The plaintiff's former vice president sought dismissal of a claim for breach of fiduciary duty, arguing that such a duty arose only from his employment contract. Id. at 517. Judge McLaughlin of this District disagreed, noting that a confidential relationship "give[s] rise to fiduciary duties under Pennsylvania law" and the complaint alleged that the defendant "occupied a 'trusted, central role in [plaintiff's] affairs.'" Id. Judge McLaughlin held that such a relationship could give rise to an

independent duty to refrain from breaching a fiduciary duty and that the claim therefore could not be dismissed under the gist of the action doctrine. Id.

Similarly, in PNC Mortgage v. Superior Mortgage Corp., the plaintiff company alleged that former employees had breached a fiduciary duty of loyalty. No. 09-cv-5084, 2012 WL 628000, at *26 (E.D. Pa. Feb. 27, 2012). Judge Surrick of this District concluded that Pennsylvania "recognizes that employees, as agents of their employer, owe fiduciary duties of loyalty," which require them to "refrain from competing with the employer and from taking action on behalf of, or otherwise assisting, the employer's competitors throughout the duration of the agency relationship, as well as a duty not to use property or confidential information of the employer for the employee's own purpose or those of a third party." Id. (internal quotation marks and alterations omitted). As a result, a claim for breach of fiduciary duty is a situation "where the parties' obligations are not defined by the terms of contract, but rather by larger social policies embodied in the law of torts," and thus the claim was not barred by the gist of the action doctrine. Id. (internal quotation marks omitted).

Against that legal backdrop, the Court now turns to CertainTeed's allegations of its relationship with Aiken and concludes that Aiken's fiduciary duties are inextricably tied to the terms of his Noncompete Employee Agreement. In its claim for breach of fiduciary duty, CertainTeed identifies only one type of conduct that allegedly contravened Aiken's fiduciary duty: Aiken's use or disclosure of CertainTeed's confidential information and trade secrets. Am. Compl. ¶¶ 67-75. But this very same conduct is alleged to be a breach of Aiken's Noncompete Employee Agreement. Id. ¶ 64. Moreover, this conduct is contemplated and covered by multiple paragraphs of the Noncompete Employee Agreement that broadly define CertainTeed's confidential information, establish Aiken's duty not to disclose such information or use it to

18

benefit Aiken or a third party, and provide that Aiken's duty "shall continue beyond termination for any reason of [his] employment" with CertainTeed. Id. Ex. D, ¶¶ 2-5.

Given these alleged facts, CertainTeed's claim for breach of fiduciary duty is "nothing more than a restatement of [its] breach of contract claim." Brown & Brown, 745 F. Supp. 2d at 621. CertainTeed has put forward "no allegations of breach of fiduciary duty or duty of loyalty that transcend or exist outside [Aiken's] obligations" under his Noncompete Employee Agreement.[8] Id. Aiken's duty not to use or disclose CertainTeed's confidential information is "grounded in [his] contractual obligations," Alpart, 574 F. Supp. 2d at 499, and is therefore a duty "imposed by mutual consensus," Bohler, 247 F.3d at 103. Thus, like the claims for breach of fiduciary duty in Brown & Brown and Alpart, and the claims for misappropriation of know-how in Bohler, CertainTeed's claim for breach of fiduciary duty is barred by the gist of the action doctrine.[9]

CertainTeed argues that Aiken's fiduciary duty arises independently from the fact of his employment, not just from the Noncompete Employee Agreement he signed. CertainTeed Opp. at 22-23. CertainTeed's argument echoes the reasoning in Freedom Medical and PNC Mortgage, although neither party cites these cases. For two reasons, this argument cannot save CertainTeed's breach of fiduciary duty claim.

First, courts analyzing Pennsylvania law have reached differing conclusions about which employees, if any, owe a fiduciary duty to their employers.[10] Under Pennsylvania law, a

---

[8] CertainTeed argues that its claim for breach of fiduciary duty based on use or disclosure of confidential information is broader than its claims for misappropriation of trade secrets. CertainTeed Opp. at 21-22. This argument misses the mark because the relevant comparison is to CertainTeed's breach of contract claim, not its statutory misappropriation claims.

[9] Having concluded that CertainTeed's claim for breach of fiduciary duty is barred by the gist of the action doctrine, the Court need not discuss Aiken's other arguments for dismissing this claim.

[10] Compare PTSI, Inc. v. Haley, 71 A.3d 304, 312 (Pa. Super. 2013) (concluding that an employee's status as a facility manager or local operations director "does not necessarily subject him to a fiduciary duty" because

fiduciary relationship may arise when the parties "do not deal on equal terms" such that "on one

side there is an overmastering influence, or, on the other, weakness, dependence or trust,

justifiably reposed." Basile v. H&R Block, Inc., 777 A.2d 95, 101 (Pa. Super. 2001). Such a

relationship exists as a matter of law "[i]n some cases, as between trustee and cestui que trust,

guardian and ward, attorney and client, and principal and agent." Id. at 102. However,

CertainTeed has not made any factual allegations that such a relationship existed with Aiken

except its conclusory assertion that Aiken was "in a position of trust and confidence" and its

allegations that Aiken was exposed to CertainTeed's confidential information and trade secrets.

Am. Compl. ¶¶ 22, 68-70. But Aiken's access to CertainTeed's confidential information and

trade secrets was predicated on his signing the Noncompete Employee Agreement. Id. ¶ 9

(alleging that "as part of its regular business practices" CertainTeed protects its confidential

information and trade secrets "by the means of employment agreements and covenants not to

compete"). So even if Aiken was acting as CertainTeed's agent, he was allowed to do so only

because he signed the Noncompete Employee Agreement and that agreement established the

terms of his agency.

 Second, even assuming that Aiken owed CertainTeed a fiduciary duty or duty of loyalty

as a result of his employment and independent of his Noncompete Employee Agreement,

CertainTeed's claim for breach of fiduciary duty would still be barred by the gist of the action

doctrine. Given the broad terms of Aiken's Noncompete Employee Agreement, CertainTeed's

---

"Pennsylvania law generally imposes that duty on officers and directors"); Orthovita, Inc. v. Erbe, No. 07-cv-2395, 2008 WL 423446, at *16 (E.D. Pa. Feb. 14, 2008) (holding that defendant, "as an officer who is not a director of the corporation, had no fiduciary duty to Orthovita under Pennsylvania law") with Colgate-Palmolive Co. v. Tandem Indus., 485 F. App'x 516, 518 (3d Cir. 2012) "Under Pennsylvania law, employees owe a fiduciary duty to their employers. . . . A fiduciary duty includes both a duty of loyalty—conducting the employer's business in the employer's best interest instead of one's own—and a duty of care—conducting the employer's business attentively and responsibly.); PNC Mortgage v. Superior Mortgage Corp., No. 09-cv-5084, 2012 WL 628000, at *26 (E.D. Pa. Feb. 27, 2012) ("Pennsylvania also recognizes that employees, as agents of their employer, owe fiduciary duties of loyalty."); Tyler v. O'Neill, 994 F. Supp. 603, 612 (E.D. Pa. 1998) ("An employee, in turn, as an agent of his employer, is considered a fiduciary with respect to matters within the scope of his agency.").

claim for breach of fiduciary duty is barred because it "essentially duplicates a breach of contract claim." <u>Brown & Brown</u>, 745 F. Supp. 2d at 619-21; <u>Alpart</u>, 574 F. Supp. 2d at 500; <u>see also</u> <u>Bohler</u>, 247 F.3d at 106 (holding that the gist of a claim based on actions prohibited by a contractual agreement is breach of contract, not tort).

CertainTeed also argues that it should be granted leave to amend its complaint a second time if any part of Aiken's motion is granted. CertainTeed Opp. at 23-24. Based on the alleged facts and arguments presently before the Court, further amendment of CertainTeed's breach of fiduciary duty claim is likely futile. Aiken's Noncompete Employee Agreement contains broad language barring Aiken from using or disclosing CertainTeed's confidential information. Am. Compl. Ex. D ¶¶ 2-5. As a result, it is unclear how CertainTeed could amend its complaint to allege Aiken's use or disclosure of its confidential information in a way that would implicate an independent fiduciary duty without also implicating Aiken's contractual duties. Moreover, the Noncompete Employee Agreement includes loyalty provisions requiring Aiken to "work exclusively to further the best interests of [CertainTeed] during the period of [his] employment" and barring him from "in any way assist[ing], a competitor." <u>Id.</u> Ex. D ¶ 6. CertainTeed's Opposition memorandum argues that Aiken also breached his duty of loyalty by preparing to compete with CertainTeed and communicating with Rockfon clients while still employed by CertainTeed. CertainTeed Opp. at 20-21. But even if CertainTeed were to amend its complaint and add these factual allegations, such conduct appears to be covered by paragraph 6 of the Noncompete Employee Agreement. For these reasons, the Court will not grant leave to amend at this time. Any damages to which Plaintiff may be entitled may be awarded without a claim of breach of fiduciary duty.

**VI.     Conclusion**

For the foregoing reasons, Defendant Aiken's Motion to Dismiss Plaintiff CertainTeed's

Amended Complaint (ECF 22) will be denied in part and granted in part. An appropriate order

follows.

O:\CIVIL 14\14-3925 certainteed v. aiken\14cv3925.Memo.MotionToDismiss.2015-01-29.docx